IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA M. CHANG, | ) Case No. C-11-1951 SC |
| Plaintiff, | ) ORDER GRANTING IN PART AND |
| v. | ) DENYING IN PART DEFENDANTS' |
| | ) MOTION TO DISMISS |
| WACHOVIA MORTGAGE, FSB, a national association; WELLS FARGO BANK, N.A., a national association; and DOES 1 through 50, inclusive, | ) |
| Defendants. | ) |

## I. INTRODUCTION

Plaintiff Cynthia M. Chang ("Plaintiff") commenced this action against Wachovia Mortgage, FSB ("Wachovia") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants"), bringing nine causes of action arising from loan modification discussions between Plaintiff and Defendants and the May 2010 foreclosure sale of Plaintiff's San Francisco, California residence. ECF No. 1 ("Notice of Removal") Ex. A ("Compl."). Now before the Court is Defendants' fully briefed motion to dismiss Plaintiff's Complaint. ECF Nos. 13 ("Mot."), 17 ("Opp'n"), 18 ("Reply"). For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

///

///

## II.  BACKGROUND

As it must on a motion brought under Federal Rule of Civil Procedure 12(b)(6), the Court assumes the truth of the well-pleaded facts in Plaintiff's Complaint.  Plaintiff is a resident of San Francisco, and from 1996 until around May 12, 2010, she was the owner of a residence located at 80 Collingwood Street, Number 302, San Francisco, California, Block 2648, Lot 056 ("the residence").  Compl. ¶ 1.  Around May 18, 2006, Plaintiff refinanced the residence with World Savings Bank.[1]  Id. ¶ 8.  The refinance consisted of two loans: the first in the principal amount of $380,000 ("the first loan") and the second, an equity line of credit, in the amount of $50,000 ("the second loan").  Id.

Plaintiff alleges that she made all payments on her loans until sometime in 2008, when she lost her job.  Id. ¶ 7.  Around this time, Plaintiff contacted Defendants to inquire into loan modification.  Id. ¶ 9.  Plaintiff claims that these discussions continued through May 2010, and that Defendants "made statements, promises and assurances to plaintiff that her requests for a loan modification or a new loan would be reasonably considered in good faith."  Id.

On July 24, 2009, and again on September 1, 2009, Defendants recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD") with respect to the second loan on Plaintiff's home.  Id. ¶ 10.[2]  Plaintiff claims that upon receiving the NOD, she "immediately contacted defendants and was assured that her requests

---

[1] Plaintiff alleges, and Defendants concede, that Wachovia is World Savings Bank's successor in interest, and that Wells Fargo is Wachovia's successor in interest.  Id. ¶¶ 2-6.

[2] It is not clear from the Complaint why two NODs were recorded.

2

and applications for a loan modification and new loan were being considered and that she would not be hurt by the NOD so long as such negotiations continued." Id. ¶ 11.

Plaintiff alleges that on or about January 11, 2010, Wachovia recorded a Notice of Trustee's Sale ("Notice") setting a private sale under the Deed of Trust securing the second loan for February 1, 2010. Id. ¶ 12. Plaintiff continued to discuss modification of both loans with Defendants. Id. Plaintiff alleges that the sale date was postponed on more than one occasion, but Plaintiff did not receive notice of this postponed sale date. Id.

Plaintiff claims that in April 2010, Defendants informed Plaintiff that they were "unable to proceed" with the modification. Id. ¶ 13. Plaintiff claims that despite this communication, Defendants "continued to lead plaintiff to believe that she could obtain a modification of the First Loan and Second Loan and retain ownership of her residence." Id. ¶ 14. Plaintiff claims that Defendants told her on or about May 17, 2010 that the residence was sold at a May 12, 2010 foreclosure sale, but informed her on June 18, 2010 that the loan could be reinstated. Id. ¶ 13.

Plaintiff claims that due to the sale, she suffered between $250,000 and $300,000 in lost equity in the residence. Id. ¶ 16.

Plaintiff brings nine causes of action. First, she alleges a claim for promissory estoppel based on Defendants' statements that they would not proceed with a foreclosure sale so long as Plaintiff's modification negotiations continued. Id. ¶ 18-24. Second, she alleges fraud, misrepresentation, and reckless disregard, asserting that Defendants' conduct "constituted material misrepresentations, omissions . . . and actions in reckless

3

disregard of plaintiff's rights and remedies to retain and preserve her Residence." Id. ¶ 26. Third, Plaintiff alleges Defendants committed negligent misrepresentation by making misleading or inaccurate statements to Plaintiff despite having access to accurate information and data. Id. ¶ 30. Fourth, Plaintiff alleges negligence, claiming Defendants "breached their duties of care and skill to plaintiff in servicing and administering plaintiff's First Loan and Second Loan." Id. ¶¶ 31-33. Fifth, Plaintiff alleges Defendants breached the implied covenant of good faith and fair dealing by secretly continuing the foreclosure sale while continuing modification negotiations with Plaintiff. Id. ¶ 26. Sixth, Plaintiff alleges a claim for unconscionability, stating that "the conduct of defendants . . . in enforcing the Deed of Trust and foreclosure action through the Trustee's sale was unconscionable since it contained elements of oppression (i.e. an inequality of bargaining power) and surprise (i.e. failure to inform plaintiff of the running of separate statutory time periods under the Civil Code, resulting in an allocation of risks in an objectively unreasonable manner)." Id. ¶ 40. Seventh, Plaintiff alleges Defendants waived their right to foreclosure by continuing loan modification negotiations. Id. ¶ 41. Eighth, Plaintiff alleges a claim for violation of California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200 ("UCL"), claiming Defendants engaged in deceptive business practices by "failing to provide plaintiff with accurate and proper information as to loan status and steps of foreclosure in accordance with the requirements of the California Civil Code," concealing from Plaintiff information about the ongoing foreclosure, and "[i]nducing plaintiff to not resume

1  her payments or otherwise cure alleged defaults by falsely
2  promising and stating that a modification . . . would reasonably be
3  considered in good faith based on plaintiff's circumstances." Id.
4  ¶ 46. Ninth, Plaintiff alleges intentional infliction of emotional
5  distress ("IIED"), asserting: "Defendants' conduct was outrageous
6  and beyond the bounds of decency and in reckless disregard of
7  causing plaintiff mental and emotional distress." Id. ¶ 51.

   Defendants move to dismiss all nine claims. Defendants argue that all claims are preempted by the Federal Home Owner's Loan Act ("HOLA"), and that none of the nine claims are properly pleaded.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed

to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and sufficiently plausible such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

## IV. DISCUSSION

### A. HOLA Preemption

Defendants argue that because World Savings Bank was a federal savings bank organized and operated under HOLA, all nine of Plaintiff's claims are preempted by HOLA and its implementing regulations. Mot. at 14. Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008). HOLA gives the Office of Thrift Supervision ("OTS") "broad authority to issue regulations governing thrifts." Id. at 1005 (citing 12 U.S.C. § 1464).

OTS, in turn, has promulgated regulations stating that OTS "occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a) ("section 560.2"). Section 560.2 offers a framework for determining whether a state law claim is preempted by HOLA and its implementing regulations, and the Ninth Circuit has held that this framework controls. Silvas, 514 F.3d at 1005. Courts must first determine whether the state law is one of the enumerated types of laws expressly identified as preempted in section 560.2(b). Id. These include:

6

>      (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
>      . . . .
>
>      (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
>      (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

12 C.F.R. § 560.2(b).

If the state law is of one of these enumerated types, "the analysis will end there; the law is preempted." Silvas, 514 F.3d at 1005. If not, the court should determine "whether the law affects lending." Id. If it does, the law is presumed to be preempted, subject to the exceptions provided by section 560.2(c). Id. Section 560.2(c) provides:

>      State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of [section 560.2(a)]:
>
>      (1) Contract and commercial law;
>
>      (2) Real property law;
>
>      (3) Homestead laws specified in 12 U.S.C. § 1462a(f);
>
>      (4) Tort law;
>
>      (5) Criminal law; and

7

> (6) Any other law that OTS, upon review, finds:
>
>> (i) Furthers a vital state interest; and
>>
>> (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2(c). These exceptions are "to be interpreted narrowly." Silvas, 514 F.3d at 1005.

Defendants argue that Plaintiff's claims are preempted under section 560.2(b)(4) (preempting laws relating to "terms of credit," including "the circumstances under which a loan may be called due and payable") and (b)(10) (preempting laws concerning "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages"). Mot. at 15. Defendants argue that Plaintiff's chief allegation of wrongdoing -- that Defendants committed fraud, acted in bad faith, or otherwise violated the law through their actions taken and statements made during the loan modification talks and the subsequent foreclosure sale -- concerns "processing" or "servicing" of the mortgage and thus compels preemption. Id. Plaintiff argues HOLA preemption does not apply, claiming, "HOLA was historically passed for the protection of owners and borrowers, not creditors." Opp'n at 6.

HOLA preemption is not as simple as either side presents it. In Silvas, the Ninth Circuit focused not on the nature of the cause of action allegedly preempted, but rather on the "functional effect upon lending operations of maintaining the cause of action." Naulty v. GreenPoint Mortg. Funding, Inc., No. 09-1542, 2009 WL 2870620, at *4 (N.D. Cal. Sep. 3, 2009). "The question was rather whether an application of a given state law to the activities of

federal savings associations would 'impose requirements' regarding the various activities broadly regulated by the OTS." Id. Courts have thus interpreted Silvas to not preempt all state law causes of action arising out of loan modification and/or foreclosure proceedings. E.g., Susilo v. Wells Fargo Bank, N.A., No. 11-1814, 2011 WL 2471167, at *4-6 (C.D. Cal. June 21, 2011) (denying bank's motion to dismiss borrower's breach of contract, negligence, bad faith, and fraud claims as preempted by HOLA).

Several of Plaintiff's claims are based on alleged affirmative statements by the bank that Plaintiff allegedly relied upon. These include Plaintiff's claims for promissory estoppel, fraud, IIED, and breach of the implied covenant of good faith and fair dealing. The only "requirement" these claims impose on lending institutions is that they be held responsible for the statements they make to their borrowers. If these causes of action were preempted, federal savings associations would be free to lie to their customers with impunity. The Court finds these claims are not preempted by HOLA.

However, the Court finds Plaintiff's negligence and negligent misrepresentation claims to be preempted. These claims are not premised on affirmative misrepresentation, concealment, or fraud: rather, they are premised on Defendants' representatives' alleged failure to use proper care in communicating with Plaintiff, to ensure other representatives of Defendants were not pursuing foreclosure, and to verify the accuracy of the statements they made. Allowing these claims to go forward would amount to an imposition of new disclosure and notice requirements on federal savings associations. Accordingly, the Court DISMISSES, WITH PREJUDICE, Plaintiff's claims for negligence and negligent

9

misrepresentation.

The Court discusses Defendants' challenges to the remaining causes of action below.

**B.  Promissory Estoppel**

The elements of a claim for promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." Aceves v. U.S. Bank, N.A., 192 Cal. App. 4th 218, 225 (Ct. App. 2011).

Defendants argue that Plaintiff fails to allege the first three elements. The Court disagrees. Plaintiff alleges that Defendants told her they would not proceed with a foreclosure sale so long as Plaintiff's loan modification negotiations continued. Plaintiff allegedly relied on these promises by not challenging the foreclosure sale, seeking alternative funding, or pursuing a short sale. As a result, Plaintiff's residence was sold, causing damages in the form of lost equity and, ultimately, eviction. Compl. ¶¶ 18-24. Plaintiff properly pleads a promissory estoppel claim. As such, the Court DENIES Defendants' Motion with respect to Plaintiff's promissory estoppel claim.

**C.  Fraud**

Defendants argue that Plaintiff has not properly pleaded her second claim for fraud, misrepresentation, and reckless disregard, given Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for claims sounding in fraud. Mot. at 4.

The Court agrees. "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct

10

charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted). Plaintiff's Complaint obliquely refers to numerous unidentified "statements" by unidentified representatives of Defendants; she fails to sufficiently identify "what" these statements were, "when" they were made, or "who" said them. As such, Plaintiff has failed to properly plead her fraud claims. Because the heightened pleading standard is relaxed when "the defendant must necessarily possess full information concerning the facts of the controversy" or "when the facts lie more in the knowledge of the opposite party," Susilo v. Wells Fargo Bank, N.A., --- F. Supp. 2d ---, 2011 WL 2471167, at *10 (C.D. Cal. June 21, 2011), Plaintiff may satisfy Rule 9(b) without providing the names of Defendants' representatives who allegedly made the statements. However, more detail is required than what Plaintiff supplies here. Accordingly, Plaintiff's fraud claim is dismissed WITH LEAVE TO AMEND.

### D. Implied Covenant of Good Faith and Fair Dealing

In California, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Carma Dev. (Cal.), Inc. v. Marathon Dev. California, Inc., 2 Cal. 4th 342, 371 (1992). "In general, the covenant imposes a duty upon a party to a contract not to deprive to other party of the benefits of the contract." Sutherland v. Barclays American/Mort. Corp., 53 Cal. App. 4th 299, 314 (Ct. App. 1997).

Defendants allege that Plaintiff's claim fails because "Plaintiff does not specify what contract is at issue, does not

11

attach a contract to the complaint, and does not sufficiently plead the express terms of any contract." Mot. at 9. Defendants also argue that if Plaintiff's claim relates to the note or the Deed of Trust, Plaintiff's claim should be barred because she "admittedly breached the contract by failing to make the required payments." Id.

The Court agrees with Defendants that Plaintiff, having failed to identify the contract at issue and the benefits deprived by Defendants, has failed to plead this claim with the required specificity. However, the Court rejects Defendants' argument that Plaintiff's failure to make payments under the note relieved Defendants of their duty to act in good faith in performing under the note and in enforcing it. As such, Plaintiff may be able to plead a claim based on Defendants' conduct as a party to the deed of trust. Because Plaintiff has not pleaded sufficient facts, the Court DISMISSES, WITH LEAVE TO AMEND, Plaintiff's claim.

### E. Unconscionability and Waiver Claims

Plaintiff alleges the unusual causes of action of "unconscionability" and "waiver." Defendants argue that "the law does not recognize a claim for unconscionability." Mot. at 11. Plaintiff does not argue otherwise in her Opposition.

California law is clear that unconscionability is not a cause of action, but rather a defense to the enforcement of a contract. Dean Witter Reynolds, Inc. v. Super. Ct., 211 Cal. App. 3d 758, 766 (Ct. App. 1989). California also does not recognize a claim for waiver; rather, it is "the intentional relinquishment of a known right." Rubin v. Los Angeles Fed. Sav. & Loan Ass'n, 159 Cal. App. 3d 292, 298 (Ct. App. 1984). To the extent Plaintiff argues that

12

Defendants waived their right under the deed of trust to foreclose by allegedly telling Plaintiff that they would halt foreclosure proceedings and negotiate toward a modification, Plaintiff essentially presents a poorly pleaded breach-of-contract claim. As such, both Plaintiff's unconscionability and waiver claims are DISMISSED WITH PREJUDICE.

### F. UCL

Defendants allege that Plaintiff's UCL claim "is plagued with incurable defects." Mot. at 12. Defendants argue that it is unclear from Plaintiff's Complaint upon which of the three prongs of UCL -- unfair, unlawful, or fraudulent -- Plaintiff premises her UCL claim. Id.

Given Plaintiff's consistent use of the term "fraudulent" in the relevant portion of Plaintiff's Complaint, the Court surmises that her UCL claim is premised on the allegedly fraudulent business practices of Defendants. Compl. ¶¶ 43-49. UCL claims premised on fraudulent conduct trigger the heightened pleading standard of Rule 9(b). Kearns v. Ford Motor Co., 567 F.3d. 1120, 1125 (9th Cir. 2009).

In her Complaint, Plaintiff cites four acts or practices by Defendants. First, she alleges a failure to provide Plaintiff with accurate and proper information as to loan status and steps of foreclosure "in accordance with the requirements of the California Civil Code." Compl. ¶ 46. To the extent Plaintiff alleges that this constitutes a fraudulent act, Plaintiff has failed to satisfy Rule 9(b). To the extent that Plaintiff alleges an "unfair" or "unlawful" act, Plaintiff has failed to allege what specific disclosure requirements Defendants violated. Furthermore, because

HOLA preempts most disclosure requirements, see supra, such a cause of action would likely be preempted under Silvas.

Second, Plaintiff alleges Defendants made statements to Plaintiff and concealed information from Plaintiff relating to the ongoing foreclosure sale. Third, Plaintiff alleges "[e]ngaging in misleading and omissions as to the foreclosure sale and deprived plaintiff of the opportunity to sell her residence and realize the 'equity' value of between $250,000.00 and $300,000." Compl. ¶ 46. The Court cannot parse this sentence, but it appears to sound in fraud. Fourth, Plaintiff alleges Defendants induced her to "not resume her payments or otherwise cure alleged defaults by falsely promising and stating that a modification of the First Loan and Second Loan would be reasonably considered in good faith based on plaintiff's circumstances." None of these are pleaded with the required specificity under Rule 9(b).

Because Plaintiff has failed to plead her UCL claim with the required specificity, the Court DISMISSES it WITH LEAVE TO AMEND.

**G.  Intentional Infliction of Emotional Distress**

To plead a claim for IIED, Plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Christensen v. Super. Ct,, 54 Cal. 3d 868, 903 (1991). Conduct is only "extreme and outrageous" when it was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Davidson v. City of Westminster, 32 Cal.3d 197, 185 (1982)

14

(citation omitted).  For emotional distress to be severe, it must be "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it."  Fletcher v. Western Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397, (Ct. App. 1970).

In rather broad strokes and with little detail, Plaintiff alleges that she suffered extreme emotional distress due to Defendants' conduct.  She fails to state what about Defendants' conduct rendered it so extreme as to "exceed all bounds of that usually tolerated in a civilized community."  Given the lack of detail, the Court finds that Plaintiff has failed to plead a plausible IIED claim.  As such, the Court DISMISSES, WITH LEAVE TO AMEND, Plaintiff's IIED claim.

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the motion of Defendants Wachovia Mortgage and Wells Fargo Bank, N.A. to dismiss Plaintiff Cynthia M. Chang's Complaint, and rules as follows:

- Plaintiff's second cause of action for fraud, misrepresentation, and reckless disregard is DISMISSED WITH LEAVE TO AMEND.
- Plaintiff's third cause of action for negligent misrepresentation is DISMISSED WITH PREJUDICE.
- Plaintiff's fourth cause of action for negligence is DISMISSED WITH PREJUDICE.
- Plaintiff's fifth cause of action for breach of the implied covenant of good faith and fair dealing is DISMISSED WITH

15

LEAVE TO AMEND.

- Plaintiff's sixth cause of action for unconscionability is DISMISSED WITH PREJUDICE.

- Plaintiff's seventh cause of action for waiver is DISMISSED WITH PREJUDICE.

- Plaintiff's eighth cause of action for violation of section 17200 of California's Business and Professions Code is DISMISSED WITH LEAVE TO AMEND.

- Plaintiff's ninth cause of action for intentional infliction of emotional distress is DISMISSED WITH LEAVE TO AMEND.

Plaintiff may proceed with her first cause of action for promissory estoppel. Plaintiff is granted thirty (30) days' leave to file an amended complaint. If Plaintiff fails to file an amended complaint within this time frame, her second through ninth causes of action are dismissed WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

Dated: July 21, 2011

UNITED STATES DISTRICT JUDGE