1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5              FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7  CYNTHIA M. CHANG,                ) Case No. C-11-1951 SC
                                    )
8           Plaintiff,              ) ORDER GRANTING MOTION TO
                                    ) DISMISS AND DENYING MOTION
9       v.                          ) TO STRIKE
                                    )
10                                  )
   WACHOVIA MORTGAGE, FSB, a national )
11 association; WELLS FARGO BANK,   )
   N.A., a national association; and )
12 DOES 1 through 50, inclusive,    )
                                    )
13          Defendants.             )
                                    )
14 ─────────────────────────────────

15 I.    **INTRODUCTION**

16      Plaintiff Cynthia M. Chang ("Plaintiff") brings this action

17 against Wachovia Mortgage, FSB ("Wachovia") and Wells Fargo Bank,

18 N.A. ("Wells Fargo") (collectively, "Defendants"), pleading five

19 causes of action arising from loan modification discussions between

20 Plaintiff and Defendants and the May 2010 foreclosure sale of

21 Plaintiff's San Francisco, California residence.  ECF No. 22

22 ("FAC").  Now before the Court is Wells Fargo's fully briefed

23 Motion to Dismiss and Motion to Strike Plaintiff's First Amended

24 Complaint ("FAC").  ECF Nos. 28 ("MTD"), 29 ("MTS"), 31 ("Opp'n"),

25 35 ("MTD Reply"), 36 ("MTS Reply").  For the following reasons, the

26 Court GRANTS Wells Fargo's Motion to Dismiss Plaintiff's second

27 through fifth causes of action and DENIES Wells Fargo's Motion to

28 Strike as moot.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

## II.   BACKGROUND

### A.   Factual Background

As it must on a motion brought under Federal Rule of Civil Procedure 12(b)(6), the Court assumes the truth of the well-pleaded facts in Plaintiff's Complaint.  Plaintiff is a resident of San Francisco, and from 1996 until around May 12, 2010, she was the owner of a residence located at 80 Collingwood Street, Number 302, San Francisco, California, Block 2648, Lot 056 ("the residence"). FAC ¶¶ 1, 7.  Around May 18, 2006, Plaintiff refinanced the residence with World Savings Bank ("WSB").[1]  Id. ¶ 8.  The refinance consisted of two loans: the first in the principal amount of $380,000 ("the first loan") and the second, an equity line of credit, in the amount of $50,000 ("the second loan").  Id.

Plaintiff alleges that she made all payments on her loans until sometime in 2008, when she lost her job.  Id. ¶ 7.  Around this time, Plaintiff contacted Defendants to inquire into loan modification.  Id. ¶ 9.  Plaintiff claims that these discussions continued through May 2010, and that Defendants "made statements, promises and assurances to plaintiff that her requests for a loan modification or a new loan would be reasonably considered in good faith."  Id.

On July 24, 2009, and again on September 1, 2009, Defendants recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD") with respect to the second loan on Plaintiff's home. Id. ¶ 10.  Plaintiff claims that upon receiving the NOD, she

---

[1] Plaintiff alleges, and Wells Fargo concedes, that Wachovia is WSB's successor in interest, and that Wells Fargo is Wachovia's successor in interest.  Id. ¶¶ 2-6.

2

**United States District Court**
For the Northern District of California

1   "immediately contacted defendants and was assured that her requests

2   and applications for a loan modification and new loan were being

3   considered and that she would not be hurt by the NOD so long as

4   such negotiations continued."  Id. ¶ 11.

5        On or about January 11, 2010, Wachovia recorded a Notice of

6   Trustee's Sale setting for February 1, 2010 a private sale under

7   the Deed of Trust securing the second loan.  Id. ¶ 12.  Plaintiff

8   continued to discuss modification of both loans with Defendants.

9   Id.  The sale date was postponed on more than one occasion, but

10  Plaintiff allegedly did not receive notice of this postponed sale

11  date.  Id.  Plaintiff claims that Defendants promised and assured

12  her that "so long as plaintiff and defendants were working on a

13  loan modification or new loan, any foreclosure or trustee's sale

14  would be postponed."  Id.

15       Plaintiff specifically describes many of her communications

16  with Defendants concerning a loan modification in early 2010.  On

17  January 21, 2010 she had a telephone conversation with a Wachovia

18  representative in which there was a discussion of the "Home

19  Affordable Modification Plan" ("HAMP").  Id. ¶ 13a.  On March 4 and

20  and 5, 2010, Plaintiff faxed to "Melissa" at Wells Fargo a

21  "hardship letter," financial statement, tax return and other

22  information.  Id. ¶ 13b.  On March 5, 2010 Plaintiff received a

23  letter from Wachovia thanking her for her response to the Mortgage

24  Assistance Plan and requesting "current sources of income

25  immediately" "[i]n order to move forward with modification

26  process."  Id. ¶ 13c.  Plaintiff also alleges that around this time

27  she "was assured" by someone at phone number 800-282-3458 "that the

28  foreclosure had been or was being postponed."  Id. ¶ 13b.  The FAC

**United States District Court**
For the Northern District of California

1 is not clear on when this assurance was made or how long the

2 foreclosure was to be postponed.

3      Plaintiff claims that, in April 2010, Defendants informed her

4 that they were "unable to proceed" with the modification.  Id. ¶

5 14.  By two letters dated April 12, 2010, Wachovia stated that the

6 foreclosure process would resume.  Id.  On May 12, 2010, the

7 residence was sold by a Trustee at public auction.  Id.; RJN Ex. J

8 ("Trs. Deed Upon Sale").[2]  Plaintiff alleges that the sale deprived

9 her of substantial equity in the Residence, estimated to be between

10 $250,000 and $300,000.  FAC ¶ 14.

11      Plaintiff alleges that, even after Defendants resumed the

12 foreclosure process, Defendants continued to lead Plaintiff to

13 believe that she could obtain a loan modification.  Id. ¶ 15.  In

14 an April 9, 2010 letter, Wachovia stated that, even though

15 Plaintiff was ineligible for assistance under the Mortgage

16 Assistance Plan Modification, she could still be eligible for other

17 loss mitigation options.  Id. ¶ 15a.  In an April 15, 2010

18 telephone conversation with an unidentified Wachovia

19 representative, "it was discussed that plaintiff could receive

20 temporary payment assistance and, if not possible, she could

21 ────────────────
[2] Wells Fargo asks the Court to take judicial notice of a number of
22 documents.  ECF No. 30 ("RJN").  Under Rule 201 of the Federal
Rules of Evidence, a court may take judicial notice of facts
23 generally known within the territorial jurisdiction of the trial
court or capable of accurate and ready determination by resort to
24 sources whose accuracy cannot reasonably be questioned.  A court
may also take judicial notice of a document if the plaintiff's
25 claim depends on the contents of the document, and the parties do
not dispute the authenticity of the document.  Knievel v. ESPN, 393
26 F.3d 1068, 1076 (9th Cir. 2005).  However, the Court may not take
judicial notice of the truth of the facts recited within a
27 judicially noticed document.  Lee v. City of Los Angeles, 250 F.3d
668, 688-90 (9th Cir. 2001).  The Court GRANTS Wells Fargo's RJN,
28 but limits its review of the exhibits accordingly.

4

United States District Court
For the Northern District of California

1  reinstate the loan."  Id. ¶ 15c.  Plaintiff complains that in April

2  16 and 20, 2010 telephone conversations, Defendants failed to

3  inform her that the foreclosure was proceeding.  Id. ¶¶ 15c, 15d.

4  Plaintiff alleges that Wachovia again failed to mention the

5  impending foreclosure in a May 5, 2010 letter notifying her that it

6  was unable to offer her credit on the terms requested.  Id. ¶ 16.

7      Plaintiff also alleges that Defendants acted "inconsistently

8  and recklessly" after the May 12, 2010 foreclosure sale.  Id. ¶ 18.

9  For example, in a May 12, 2010 conversation, Wachovia's Bernice

10  Hernandez ("Hernandez") told Plaintiff that her loans could not be

11  reinstated and that the trustee was selling and foreclosing on the

12  second loan.  Id. ¶ 17.  Defendants later informed plaintiff that

13  the loan could be reinstated.[3]  Id. ¶ 18.  Plaintiff also points to

14  a June 23, 2010 letter from Wachovia stating that failure to cure

15  default on one of her loans could result in foreclosure and that

16  Plaintiff may be eligible for Home Ownership counseling.  Id. ¶ 18.

17  Finally, Plaintiff refers to two August 3, 2010 letters from

18  Wachovia, one requesting documents for the Mortgage Assistance Plan

19  and another stating that Wachovia was unable to offer her a

20  modification.  Id.  This letter also stated that Plaintiff had

21  thirty days to contact Wachovia about its decision and that "no

22  foreclosure sale will be conducted and you will not lose your home"

23  during that thirty day period.  Id.

24  ///

25  ///

26

27  [3] Plaintiff specifically refers to telephone conversations with "Rachel," "Richard" and "Ron."  Id. ¶ 18.  However, it is not clear

28  what these individuals told Plaintiff, when these conversations took place, or what positions these individuals held.

**United States District Court**
For the Northern District of California

1   **B.   Procedural History**

2   Plaintiff brought this action in California state court on

3   March 21, 2011, alleging nine causes of action.  ECF No. 1 ("Not.

4   of Removal") Ex. A. ("Compl.").  First, she alleged a claim for

5   promissory estoppel based on Defendants' statements that they would

6   not proceed with a foreclosure sale so long as Plaintiff's

7   modification negotiations continued.  Id. ¶ 18-24.  Second, she

8   alleged fraud, misrepresentation, and reckless disregard, asserting

9   that Defendants' conduct "constituted material misrepresentations,

10  omissions . . . and actions in reckless disregard of plaintiff's

11  rights and remedies to retain and preserve her Residence."  Id. ¶

12  26.  Third, Plaintiff alleged Defendants committed negligent

13  misrepresentation.  Id. ¶ 30.  Fourth, Plaintiff alleged

14  negligence.  Id. ¶¶ 31-33.  Fifth, Plaintiff alleged Defendants

15  breached the implied covenant of good faith and fair dealing by

16  secretly continuing the foreclosure sale while continuing

17  modification negotiations with Plaintiff.  Id. ¶ 26.  Sixth,

18  Plaintiff alleged a claim for unconscionability.  Id. ¶ 40.

19  Seventh, Plaintiff alleged Defendants waived their right to

20  foreclosure by continuing loan modification negotiations.  Id. ¶

21  41.  Eighth, Plaintiff alleged a claim for violation of

22  California's Unfair Competition Law, Cal. Bus. & Profs. Code §

23  17200 ("UCL"), claiming Defendants engaged in deceptive business

24  practices by "failing to provide plaintiff with accurate and proper

25  information as to loan status and steps of foreclosure in

26  accordance with the requirements of the California Civil Code,"

27  concealing from Plaintiff information about the ongoing

28  foreclosure, and "[i]nducing plaintiff to not resume her payments

6

**United States District Court**
For the Northern District of California

1   or otherwise cure alleged defaults by falsely promising and stating

2   that a modification . . . would reasonably be considered in good

3   faith based on plaintiff's circumstances."  Id. ¶ 46.  Ninth,

4   Plaintiff alleged intentional infliction of emotional distress

5   ("IIED"), asserting: "Defendants' conduct was outrageous and beyond

6   the bounds of decency and in reckless disregard of causing

7   plaintiff mental and emotional distress."  Id. ¶ 51.

8       Wells Fargo moved to dismiss the Complaint on April 28, 2011.

9   ECF No. 6.  On July 21, 2011, the Court granted in part and denied

10  in part the motion.  ECF No. 21 ("July 21, 2011 Order").  Of

11  Plaintiff's original nine causes, the Court dismissed four with

12  prejudice, and left one, Plaintiff's claim for promissory estoppel,

13  undisturbed.  Id. at 15-16.  The Court dismissed the remaining four

14  causes of action with leave to amend.  Id.  Specifically, Plaintiff

15  was granted leave to amend her causes of action for: fraud,

16  misrepresentation, and reckless disregard; breach of the implied

17  covenant of good faith and fair dealing; a UCL violation; and IIED.

18  Id.  With respect to Plaintiff's fraud claim, the Court found that

19  more detail was required as to what false and misleading statements

20  were made, when they were made, and who said them.  Id. at 11.

21  Plaintiff's claim for breach of the implied covenant of good faith

22  and fair dealing failed because Plaintiff failed to identify the

23  contract at issue and the benefits deprived by Defendants.  Id. at

24  12.  The Court found that Plaintiff's UCL claim was not pleaded

25  with the required specificity.  Id. at 13.  Finally, as to

26  Plaintiff's IIED claim, Plaintiff failed to state what about

27  Defendants' conduct rendered it so extreme as to "exceed all bounds

28  of that usually tolerated in a civilized community."  Id. at 15.

United States District Court
For the Northern District of California

1   Plaintiff filed her FAC on August 16, 2011, asserting five

2   causes of action for (1) promissory estoppel; (2) fraud,

3   misrepresentation, and reckless disregard; (3) breach of the

4   implied covenant of good faith and fair dealing; (4) violation of

5   the UCL; and (5) IIED.  FAC ¶¶ 22-50.  The gravamen of the FAC

6   appears to be that Plaintiff would have sold her residence or

7   obtained alternative financing had she not been misled by

8   Defendants' statements and actions concerning a loan modification

9   or had adequate notice of the trustee's sale.  See id. ¶¶ 12, 14.

10  The FAC includes additional facts not alleged in the Complaint.

11  Defendants contend these new facts are insufficient to cure the

12  defects identified in the Court's July 21, 2011 Order.  Defendants

13  now move to dismiss the second, third, fourth, and fifth causes of

14  action in the FAC.  Defendants have also moved to strike various

15  paragraphs from the FAC.

16

17  **III.  LEGAL STANDARD**

18  A motion to dismiss under Federal Rule of Civil Procedure

19  12(b)(6) "tests the legal sufficiency of a claim."  Navarro v.

20  Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

21  on the lack of a cognizable legal theory or the absence of

22  sufficient facts alleged under a cognizable legal theory."

23  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

24  1988).  "When there are well-pleaded factual allegations, a court

25  should assume their veracity and then determine whether they

26  plausibly give rise to an entitlement to relief."  Ashcroft v.

27  Iqbal, 129 S. Ct. 1937, 1950 (2009).  However, "the tenet that a

28  court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare

recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. (citing Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The allegations made

in a complaint must be both "sufficiently detailed to give fair

notice to the opposing party of the nature of the claim so that the

party may effectively defend against it" and "sufficiently

plausible" such that "it is not unfair to require the opposing

party to be subjected to the expense of discovery." Starr v. Baca,

633 F.3d 1191, 1204 (9th Cir. 2011).

## IV.   DISCUSSION

### A.   Fraud

Wells Fargo argues that Plaintiff has not properly pleaded her

second claim for "fraud, misrepresentation, reckless disregard" in

light of Federal Rule of Civil Procedure 9(b)'s heightened pleading

standard for claims sounding in fraud.[4]  MTD at 2-3.  The Court

agrees.  "To satisfy Rule 9(b), a pleading must identify the who,

what, when, where, and how of the misconduct charged, as well as

what is false or misleading about [the purportedly fraudulent]

statement, and why it is false."  Cafasso, U.S. ex rel. v. Gen.

Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)

(internal quotation marks omitted).  In its July 21, 2011 Order,

the Court found that Plaintiff's fraud claim failed because more

detail was required than what was supplied.  July 11, 2011 Order at

11.  Despite alleging new facts, Plaintiff's fraud claim still

---

[4] Plaintiff does not dispute that her second cause of action sounds in fraud.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  fails to meet the pleading requirements of Rule 9(b).

2      Plaintiff's claim does not point to any specific conduct,

3  statements, or misrepresentations, leaving Defendants and the Court

4  to guess at which of her general allegations constitute the basis

5  for her claim.  See FAC ¶¶ 29-32.  Construing the FAC liberally,

6  the crux of the claim appears to be that Defendants falsely

7  represented that they would postpone the trustee's sale so long as

8  Plaintiff and Defendants were working on a loan modification or a

9  new loan.[5]  See id. ¶ 12.  The FAC offers new details concerning

10  Plaintiff's communications with Defendants in the months preceding

11  and following the trustee's sale.  See id. ¶¶ 13-18.  However,

12  taken together and construed in the light most favorable to

13  Plaintiff, these allegations are still insufficient to state

14  plausible claim for fraud, misrepresentation, and reckless

15  disregard.

16      While Plaintiff alleges the "who," "what," and "when"

17  concerning many of her communications with Defendants in March and

18  April 2010, those communications simply do not support her theory

19  of fraud.  Plaintiff alleges that she spoke with several of

20  Defendants' representatives about loan modification alternatives in

21  March 2010.  See id. ¶ 13.  However, she does not allege particular

22  facts showing that, during this time, Defendants promised or

23  otherwise represented that they would postpone the trustee's sale

24  while these discussions were ongoing.  Plaintiff does allege that

25  she was "assured" by someone at phone number 800-282-3458 "that the

26  _____

[5] Plaintiff confirms this theory in her opposition brief.  See
27  Opp'n at 5 ("plaintiff is alleging that in the course of loan
modification dialogue and process, defendants made new independent
28  promises, relied on by plaintiff to her detriment in not seeking a
sale of her property").

10

1  foreclosure had been or was being postponed."  Id. ¶ 13b.  However,

2  Plaintiff does not identify the date on which this statement was

3  made or, critically, how long the sale was to be postponed.

4       Plaintiff's allegations concerning her April 2010

5  communications with Defendants are also unhelpful.  Plaintiff

6  alleges that, during April 2010, Defendants informed her that they

7  would be unable to proceed with her modification request; the

8  foreclosure process would resume; Plaintiff was ineligible for the

9  Mortgage Assistance Plan Modification; Plaintiff was ineligible for

10  the Home Affordable Modification Program; and Plaintiff did not

11  have enough income to qualify for short-term assistance.[6]  Id. ¶

12  14-15.  Once again, none of these allegations evidence a promise or

13  representation by Defendants that the trustee's sale would be

14  postponed while loan modification discussions were ongoing.

15  Further, the allegation that Defendants informed Plaintiff that the

16  foreclosure process would resume tend to undercut rather than

17  bolster Plaintiff's theory that Defendants led her to believe that

18  the trustee's sale was being postponed.[7]

19       The FAC also suggests that Defendants are liable for

20  fraudulent concealment because they failed to inform Plaintiff

21  _____

22  [6] Defendants also allegedly informed Plaintiff that she "may still
   be eligible for other loss mitigation options."  FAC ¶ 15a.
23  However, Plaintiff does not allege that Defendants promised or
   represented that the sale would be postponed while Plaintiff
24  applied for these programs.

25  [7] Plaintiff also alleges that Defendants falsely represented that
   the loan could be reinstated after the date of the trustee's sale.
26  See FAC ¶ 18.  Defendants argue that these post-sale statements are
   not actionable with respect to the fraud claim because Plaintiff
27  did not rely on such statements.  MTD at 5.  The Court agrees.
   Once the trustee's sale occurred, Plaintiff no longer owned the
28  property and could not have plausibly relied on Defendants' loan
   modification offers.

11

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    about the status of the foreclosure sale.  See id. ¶ 15-16.

2    Defendants argue that Plaintiff has not alleged facts establishing

3    that Wells Fargo had a duty to disclose the postponed date of the

4    foreclosure sale.  MTD at 7-8.  Citing Perlas v. GMAC Mortgage,

5    LLC, 187 Cal. App. 4th 429, 436 (Cal. Ct. App. 2010), Wells Fargo

6    points out that loan transactions generally do not give rise to a

7    fiduciary or confidential relationship.  Id. at 7.  Wells Fargo

8    also argues that, under California Civil Code section 2924g, notice

9    of postponement is to be given "by public declaration by the

10   trustee" and "[n]o other notice of postponement need be given."

11   Id. at 7-8 (quoting Cal. Civ. Code § 2924g(d)).  Plaintiff responds

12   by citing to language from the Court's July 21, 2011 Order stating

13   that "defendants are responsible for statements they make to

14   borrowers."  Opp'n at 4.  This language is inapposite as the Court

15   was referring to whether the Home Owner's Loan Act ("HOLA")

16   preempts claims for fraud premised on affirmative statements made

17   by lenders.  July 21, 2011 Order at 9.  The July 21, 2011 Order did

18   not create a new duty requiring lenders to disclose a postponed

19   sale date.

20        The Court finds that, despite the new allegations in the FAC,

21   Plaintiff has not pled sufficient facts to state a plausible claim

22   for fraud.  Accordingly, the Court DISMISSES Plaintiff's second

23   cause of action for "fraud; misrepresentation; reckless disregard"

24   WITH LEAVE TO AMEND.

25        **B.    Implied Covenant of Good Faith and Fair Dealing**

26        The Court initially dismissed Plaintiff's claim for breach of

27   the implied covenant of good faith and fair dealing because the

28   Complaint did not specify what contract was at issue.  Id. at 11-

**United States District Court**
For the Northern District of California

1    12.  Plaintiff now identifies the contract as the Line of Credit

2    Agreement, Note, and Deeds of Trust.  FAC ¶ 35.  Specifically,

3    Plaintiff alleges that Defendants "did not act in good faith under

4    the terms of the Deeds of Trust when they secretly continued the

5    foreclosure sale from the February 1, 2010 date and continued to

6    negotiate with plaintiff for a modification of the First Loan and

7    Second Loan without informing plaintiff of the new secretly

8    determined date."  Id. ¶ 36.  Wells Fargo argues that the claim

9    fails as a matter of law since the implied covenant of good faith

10   and fair dealing cannot prohibit Defendants from foreclosing on the

11   property, an act which the Deed of Trust expressly permits.  MTD at

12   12-14.  The Court agrees.

13       "It is universally recognized [that] the scope of conduct

14   prohibited by the covenant of good faith is circumscribed by the

15   purposes and express terms of the contract."  Carma Developers,

16   Inc. v. Marathon Dev. California, Inc., 2 Cal. 4th 342, 373 (1992).

17   "[T]he implied covenant of good faith is read into contracts in

18   order to protect the express covenants or promises of the contract,

19   not to protect some general public policy interest not directly

20   tied to the contract's purpose."  Id. (internal quotation marks and

21   citation omitted).  Accordingly, "[t]he implied covenant cannot be

22   stretched to prohibit a party from doing that which the agreement

23   expressly permits."  Schuck v. Fannie Mae, No. 11-cv-691 OWW JLT,

24   2011 U.S. Dist. LEXIS 69257, at *15 (E.D. Cal. June 28, 2011); see

25   also Dooms v. Fed. Home Loan Mortg. Corp., No. CV F 11-0352 LJO

26   DLB, 2011 U.S. Dist. LEXIS 38550, at *22-23 (E.D. Cal. Mar. 30,

27   2011).

28       In the instant action, the Deed of Trust provides that, if

13

**United States District Court**
For the Northern District of California

1  Plaintiff failed to make payment on her loans, "[l]ender may

2  exercise the power of sale, take action to have the Property sold

3  under applicable law, and invoke such other remedies as may be

4  permitted under any applicable law."  RJN Ex. B ("DOT") at 13.

5  Plaintiff does not deny that she was in default in repaying the

6  loans.  See FAC ¶ 7.  Accordingly, the implied covenant does not

7  impose a duty on Defendants that would prevent them from exercising

8  their right to sell the property.

9       In her opposition brief, Plaintiff argues that her action is

10  different from others in which district courts rejected claims for

11  breach of the implied covenant because "defendants acted on

12  plaintiff's requests for a loan modification and undertook acts and

13  communications to plaintiff in regard thereto, such that then it

14  was a breach of the implied covenant to proceed to the trustee's

15  sale without further notice to plaintiff and opportunity for her to

16  protect herself."  Opp'n at 7.  Plaintiff's argument here is not

17  altogether clear to the Court.  To the extent that Plaintiff is

18  arguing that her claim for breach of the implied covenant is

19  premised on new, independent duties created by the acts and

20  communications of Defendants, this theory is inconsistent with the

21  cause of action pleaded in the FAC.  In any event, Plaintiff does

22  not point to any express terms of the Deed of Trust, Line of Credit

23  Agreement, or Note which would have been frustrated by the sale of

24  the residence.

25       For the foregoing reasons, the Court DISMISSES Plaintiff's

26  third claim for breach of the implied covenant of good faith and

27  fair dealing WITHOUT LEAVE TO AMEND.

28  ///

United States District Court
For the Northern District of California

1    **C.    UCL**

2        Plaintiff's UCL claim is based on four categories of deceptive

3    business practices.  First, Plaintiff cites Defendants' "[f]ailure

4    to provide Plaintiff with accurate and proper information as to

5    loan status and steps of foreclosure in accordance with the

6    requirements of [] Sections 2924, 2924b, 2924f, and 2924g of the

7    California Civil Code."  FAC ¶ 42.  Wells Fargo argues that

8    Plaintiff has failed to properly allege an unlawful act or practice

9    because she has not identified specific defects in the notice of

10   default, notice of sale, or how the sale was conducted.  MTD at 16.

11   Further, Wells Fargo complains that the Civil Code sections cited

12   by Plaintiff encompass dozens of requirements, and Plaintiff has

13   not specified which particular requirements were not met.  Id.

14   Plaintiff does not provide a coherent response.  The Court agrees

15   with Wells Fargo and finds that Plaintiff has not pled sufficient

16   facts to put Defendants on notice as to what requirements they

17   allegedly violated.

18       The last three categories of deceptive business practices

19   sound in fraud and, consequently, are subject to the heightened

20   pleading standards of Rule 9(b).  Plaintiff alleges that Defendants

21   violated the UCL by: making statements to Plaintiff and concealing

22   information relating to the ongoing foreclosure sale; "[e]ngaging

23   in misleading statements and omissions as to the foreclosure sale,

24   depriving plaintiff of the opportunity to object and stop the

25   foreclosure sale"; and "[i]nducing plaintiff to not resume her

26   payments or otherwise cure alleged defaults by falsely promising

27   and stating that a modification of the First Loan and Second Loan

28   would be reasonably considered in good faith based on plaintiff's

15

**United States District Court**
For the Northern District of California

1  circumstances."  FAC ¶ 42.  Wells Fargo argues that these

2  allegations fail to meet the heightened pleading standards of Rule

3  9(b).  MTD at 15-16.  The Court agrees.  Plaintiff's underlying UCL

4  allegations are substantially similar to, if not exactly the same

5  as, those underlying Plaintiff's claim for "fraud,

6  misrepresentation, reckless disregard."  Like the other fraud

7  allegations, Plaintiff's UCL allegations fail to specify "the who,

8  what, when, where, and how of the misconduct charged."  See section

9  IV.A., supra.

10      Accordingly, the Court DISMISSES Plaintiff's claim for

11  violation of the UCL WITH LEAVE TO AMEND.

12      **D.    Intentional Infliction of Emotional Distress**

13      Plaintiff's fifth cause of action for IIED alleges that

14  "Defendants' conduct was outrageous and beyond the bounds of

15  decency and in reckless disregard of causing plaintiff mental and

16  emotional distress."  FAC ¶ 47.  Plaintiff alleges this conduct

17  included "misleading telephone conferences promising and

18  representing defendants' willingness to consider a modification of

19  plaintiff's loans when, in fact, another department or division of

20  defendants was proceeding with a private trustee's sale of

21  foreclosure of plaintiff's Second Loan."  Id.  Defendants'

22  allegedly outrageous conduct also included representations that

23  they would consider and grant Plaintiff a home equity loan or

24  reinstate Plaintiff's first loan, even after Plaintiff's residence

25  had been sold through a trustee's sale.  Id.

26      To plead a claim for IIED, Plaintiff must allege: "(1) extreme

27  and outrageous conduct by the defendant with the intention of

28  causing, or reckless disregard of the probability of causing,

16

**United States District Court**
For the Northern District of California

1 │ emotional distress; (2) the plaintiff's suffering severe or extreme

2 │ emotional distress; and (3) actual and proximate causation of the

3 │ emotional distress by the defendant's outrageous conduct."

4 │ Christensen v. Super. Ct., 54 Cal. 3d 868, 903 (1991) (quotations

5 │ and citations omitted).  Conduct is only "extreme and outrageous"

6 │ when it was "so extreme as to exceed all bounds of that usually

7 │ tolerated in a civilized community."  Davidson v. City of

8 │ Westminster, 32 Cal. 3d 197, 185 (1982).

9 │      As pointed out by Wells Fargo, several district courts in this

10 │ circuit have held that conduct similar to that alleged by Plaintiff

11 │ was insufficient to support a claim for IIED.  See Ottolini v. Bank

12 │ of Am., No. C-11-0477 EMC, 2011 U.S. Dist. LEXIS 92900, at *32-35

13 │ (N.D. Cal. Aug. 19, 2011); Mehta v. Wells Fargo Bank, N.A., 737 F.

14 │ Supp. 2d 1185, 1204 (S.D. Cal. 2010).  The Court agrees with the

15 │ reasoning of those decisions and finds that Plaintiff has not

16 │ alleged conduct "so extreme as to exceed all bounds of that usually

17 │ tolerated in a civilized society."  Plaintiff has merely pled that,

18 │ on multiple occasions, Defendants communicated the possibility of a

19 │ loan modification or other loss mitigation options.  The fact that

20 │ Defendants ultimately found Plaintiff ineligible for a modification

21 │ and exercised their legal right to sell the property does not

22 │ render this conduct outrageous.

23 │      Accordingly, Plaintiff's fifth claim for IIED is DISMISSED

24 │ WITHOUT LEAVE TO AMEND.

25 │      **E.   Motion to Strike**

26 │      Wells Fargo moves to strike allegations in Plaintiff's second

27 │ and fifth causes of action relating to punitive damages and certain

28 │ portions of Plaintiff's prayer for relief as they relate to

**United States District Court**
For the Northern District of California

Plaintiff's fourth cause of action.  MTS at 2.  As this Order

dismisses Plaintiff's last four causes of action, Wells Fargo's

Motion to Strike is DENIED as moot.[8]


**V.    CONCLUSION**

Plaintiff Cynthia M. Chang's first cause of action for

promissory estoppel remains undisturbed.  The Court GRANTS

Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's

second, third, fourth, and fifth causes of action.  Specifically:

- The Court DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's third
  cause of action for breach of the implied covenant of good
  faith and fair dealing and fifth cause of action for
  intentional infliction of emotional distress.

- The Court DISMISSES WITH LEAVE TO AMEND Plaintiff's second
  cause of action for fraud, misrepresentation, reckless
  disregard and fourth cause of action for violation of
  California Business and Professions Code Section 17200, et
  seq.

Plaintiff is granted thirty (30) days leave to file an amended

complaint.  If Plaintiff fails to file an amended complaint within

this time frame, her second and fourth causes of action will be

dismissed WITHOUT LEAVE TO AMEND.  The Court also DENIES Wells

---

[8] Wells Fargo also moves to strike paragraph 6 of Plaintiff's prayer for relief.  MTS at 2.  Wells Fargo describes this paragraph as a prayer for "exemplary and punitive damages," id., but the paragraph actually relates to attorney's fees, FAC at 16.  The Court assumes Wells Fargo intended to move to strike paragraph 5 of Plaintiff's prayer, which refers to exemplary or punitive damages. Id. Regardless of which paragraph Wells Fargo intended to move to strike, the Court DENIES the motion.  Wells Fargo has offered no explanation as to why Plaintiff's prayer for attorney's fees is inappropriate and Plaintiff's prayer for punitive damages is now moot.

**United States District Court**
For the Northern District of California

1  Fargo Bank, N.A.'s Motion to Strike as moot.   The hearing scheduled

2  for November 18, 2011 is hereby VACATED.

3

4       IT IS SO ORDERED.

5

6       Dated: November 15, 2011

7                                        UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28