**United States District Court**
For the Northern District of California

1

2

3

4               IN THE UNITED STATES DISTRICT COURT

5              FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    CYNTHIA M. CHANG,                    )  Case No. C-11-1951 SC
                                          )
8              Plaintiff,                 )  ORDER GRANTING MOTION TO
                                          )  DISMISS AND DENYING MOTION
9         v.                              )  TO STRIKE
                                          )
10                                        )
     WACHOVIA MORTGAGE, FSB, a national   )
11   association; WELLS FARGO BANK,       )
     N.A., a national association; and    )
12   DOES 1 through 50, inclusive,        )
                                          )
13             Defendants.                )
                                          )
14   _____

15   **I.    INTRODUCTION**

16        Plaintiff Cynthia M. Chang ("Plaintiff") brings this action

17   against Wachovia Mortgage, FSB ("Wachovia") and Wells Fargo Bank,

18   N.A. ("Wells Fargo") (collectively, "Defendants"), pleading five

19   causes of action arising from loan modification discussions between

20   Plaintiff and Defendants and the May 2010 foreclosure sale of

21   Plaintiff's San Francisco, California residence.  ECF No. 22

22   ("FAC").  Now before the Court is Wells Fargo's fully briefed

23   Motion to Dismiss and Motion to Strike Plaintiff's First Amended

24   Complaint ("FAC").  ECF Nos. 28 ("MTD"), 29 ("MTS"), 31 ("Opp'n"),

25   35 ("MTD Reply"), 36 ("MTS Reply").  For the following reasons, the

26   Court GRANTS Wells Fargo's Motion to Dismiss Plaintiff's second

27   through fifth causes of action and DENIES Wells Fargo's Motion to

28   Strike as moot.

**II.   BACKGROUND**

    **A.   Factual Background**

As it must on a motion brought under Federal Rule of Civil Procedure 12(b)(6), the Court assumes the truth of the well-pleaded facts in Plaintiff's Complaint.  Plaintiff is a resident of San Francisco, and from 1996 until around May 12, 2010, she was the owner of a residence located at 80 Collingwood Street, Number 302, San Francisco, California, Block 2648, Lot 056 ("the residence"). FAC ¶¶ 1, 7.  Around May 18, 2006, Plaintiff refinanced the residence with World Savings Bank ("WSB").[1] Id. ¶ 8.  The refinance consisted of two loans: the first in the principal amount of $380,000 ("the first loan") and the second, an equity line of credit, in the amount of $50,000 ("the second loan").  Id.

Plaintiff alleges that she made all payments on her loans until sometime in 2008, when she lost her job.  Id. ¶ 7.  Around this time, Plaintiff contacted Defendants to inquire into loan modification.  Id. ¶ 9.  Plaintiff claims that these discussions continued through May 2010, and that Defendants "made statements, promises and assurances to plaintiff that her requests for a loan modification or a new loan would be reasonably considered in good faith."  Id.

On July 24, 2009, and again on September 1, 2009, Defendants recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD") with respect to the second loan on Plaintiff's home. Id. ¶ 10.  Plaintiff claims that upon receiving the NOD, she

---

[1] Plaintiff alleges, and Wells Fargo concedes, that Wachovia is WSB's successor in interest, and that Wells Fargo is Wachovia's successor in interest.  Id. ¶¶ 2-6.

2

**United States District Court**
For the Northern District of California

"immediately contacted defendants and was assured that her requests and applications for a loan modification and new loan were being considered and that she would not be hurt by the NOD so long as such negotiations continued." Id. ¶ 11.

On or about January 11, 2010, Wachovia recorded a Notice of Trustee's Sale setting for February 1, 2010 a private sale under the Deed of Trust securing the second loan. Id. ¶ 12. Plaintiff continued to discuss modification of both loans with Defendants. Id. The sale date was postponed on more than one occasion, but Plaintiff allegedly did not receive notice of this postponed sale date. Id. Plaintiff claims that Defendants promised and assured her that "so long as plaintiff and defendants were working on a loan modification or new loan, any foreclosure or trustee's sale would be postponed." Id.

Plaintiff specifically describes many of her communications with Defendants concerning a loan modification in early 2010. On January 21, 2010 she had a telephone conversation with a Wachovia representative in which there was a discussion of the "Home Affordable Modification Plan" ("HAMP"). Id. ¶ 13a. On March 4 and and 5, 2010, Plaintiff faxed to "Melissa" at Wells Fargo a "hardship letter," financial statement, tax return and other information. Id. ¶ 13b. On March 5, 2010 Plaintiff received a letter from Wachovia thanking her for her response to the Mortgage Assistance Plan and requesting "current sources of income immediately" "[i]n order to move forward with modification process." Id. ¶ 13c. Plaintiff also alleges that around this time she "was assured" by someone at phone number 800-282-3458 "that the foreclosure had been or was being postponed." Id. ¶ 13b. The FAC

1   is not clear on when this assurance was made or how long the

2   foreclosure was to be postponed.

3        Plaintiff claims that, in April 2010, Defendants informed her

4   that they were "unable to proceed" with the modification.  Id. ¶

5   14.  By two letters dated April 12, 2010, Wachovia stated that the

6   foreclosure process would resume.  Id.  On May 12, 2010, the

7   residence was sold by a Trustee at public auction.  Id.; RJN Ex. J

8   ("Trs. Deed Upon Sale").[2]  Plaintiff alleges that the sale deprived

9   her of substantial equity in the Residence, estimated to be between

10  $250,000 and $300,000.  FAC ¶ 14.

11       Plaintiff alleges that, even after Defendants resumed the

12  foreclosure process, Defendants continued to lead Plaintiff to

13  believe that she could obtain a loan modification.  Id. ¶ 15.  In

14  an April 9, 2010 letter, Wachovia stated that, even though

15  Plaintiff was ineligible for assistance under the Mortgage

16  Assistance Plan Modification, she could still be eligible for other

17  loss mitigation options.  Id. ¶ 15a.  In an April 15, 2010

18  telephone conversation with an unidentified Wachovia

19  representative, "it was discussed that plaintiff could receive

20  temporary payment assistance and, if not possible, she could

21  ──────────────────

22  [2] Wells Fargo asks the Court to take judicial notice of a number of
documents.  ECF No. 30 ("RJN").  Under Rule 201 of the Federal

23  Rules of Evidence, a court may take judicial notice of facts
generally known within the territorial jurisdiction of the trial

24  court or capable of accurate and ready determination by resort to
sources whose accuracy cannot reasonably be questioned.  A court

25  may also take judicial notice of a document if the plaintiff's
claim depends on the contents of the document, and the parties do

26  not dispute the authenticity of the document.  Knievel v. ESPN, 393
F.3d 1068, 1076 (9th Cir. 2005).  However, the Court may not take

27  judicial notice of the truth of the facts recited within a
judicially noticed document.  Lee v. City of Los Angeles, 250 F.3d
668, 688–90 (9th Cir. 2001).  The Court GRANTS Wells Fargo's RJN,

28  but limits its review of the exhibits accordingly.

reinstate the loan." Id. ¶ 15c. Plaintiff complains that in April 16 and 20, 2010 telephone conversations, Defendants failed to inform her that the foreclosure was proceeding. Id. ¶¶ 15c, 15d. Plaintiff alleges that Wachovia again failed to mention the impending foreclosure in a May 5, 2010 letter notifying her that it was unable to offer her credit on the terms requested. Id. ¶ 16.

Plaintiff also alleges that Defendants acted "inconsistently and recklessly" after the May 12, 2010 foreclosure sale. Id. ¶ 18. For example, in a May 12, 2010 conversation, Wachovia's Bernice Hernandez ("Hernandez") told Plaintiff that her loans could not be reinstated and that the trustee was selling and foreclosing on the second loan. Id. ¶ 17. Defendants later informed plaintiff that the loan could be reinstated.[3] Id. ¶ 18. Plaintiff also points to a June 23, 2010 letter from Wachovia stating that failure to cure default on one of her loans could result in foreclosure and that Plaintiff may be eligible for Home Ownership counseling. Id. ¶ 18. Finally, Plaintiff refers to two August 3, 2010 letters from Wachovia, one requesting documents for the Mortgage Assistance Plan and another stating that Wachovia was unable to offer her a modification. Id. This letter also stated that Plaintiff had thirty days to contact Wachovia about its decision and that "no foreclosure sale will be conducted and you will not lose your home" during that thirty day period. Id.

///

///

---

[3] Plaintiff specifically refers to telephone conversations with "Rachel," "Richard" and "Ron." Id. ¶ 18. However, it is not clear what these individuals told Plaintiff, when these conversations took place, or what positions these individuals held.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

**B.   Procedural History**

Plaintiff brought this action in California state court on
March 21, 2011, alleging nine causes of action.  ECF No. 1 ("Not.
of Removal") Ex. A. ("Compl.").  First, she alleged a claim for
promissory estoppel based on Defendants' statements that they would
not proceed with a foreclosure sale so long as Plaintiff's
modification negotiations continued.  Id. ¶ 18-24.  Second, she
alleged fraud, misrepresentation, and reckless disregard, asserting
that Defendants' conduct "constituted material misrepresentations,
omissions . . . and actions in reckless disregard of plaintiff's
rights and remedies to retain and preserve her Residence."  Id. ¶
26.  Third, Plaintiff alleged Defendants committed negligent
misrepresentation.  Id. ¶ 30.  Fourth, Plaintiff alleged
negligence.  Id. ¶¶ 31-33.  Fifth, Plaintiff alleged Defendants
breached the implied covenant of good faith and fair dealing by
secretly continuing the foreclosure sale while continuing
modification negotiations with Plaintiff.  Id. ¶ 26.  Sixth,
Plaintiff alleged a claim for unconscionability.  Id. ¶ 40.
Seventh, Plaintiff alleged Defendants waived their right to
foreclosure by continuing loan modification negotiations.  Id. ¶
41.  Eighth, Plaintiff alleged a claim for violation of
California's Unfair Competition Law, Cal. Bus. & Profs. Code §
17200 ("UCL"), claiming Defendants engaged in deceptive business
practices by "failing to provide plaintiff with accurate and proper
information as to loan status and steps of foreclosure in
accordance with the requirements of the California Civil Code,"
concealing from Plaintiff information about the ongoing
foreclosure, and "[i]nducing plaintiff to not resume her payments

6

United States District Court
For the Northern District of California

or otherwise cure alleged defaults by falsely promising and stating that a modification . . . would reasonably be considered in good faith based on plaintiff's circumstances." Id. ¶ 46. Ninth, Plaintiff alleged intentional infliction of emotional distress ("IIED"), asserting: "Defendants' conduct was outrageous and beyond the bounds of decency and in reckless disregard of causing plaintiff mental and emotional distress." Id. ¶ 51.

Wells Fargo moved to dismiss the Complaint on April 28, 2011. ECF No. 6. On July 21, 2011, the Court granted in part and denied in part the motion. ECF No. 21 ("July 21, 2011 Order"). Of Plaintiff's original nine causes, the Court dismissed four with prejudice, and left one, Plaintiff's claim for promissory estoppel, undisturbed. Id. at 15-16. The Court dismissed the remaining four causes of action with leave to amend. Id. Specifically, Plaintiff was granted leave to amend her causes of action for: fraud, misrepresentation, and reckless disregard; breach of the implied covenant of good faith and fair dealing; a UCL violation; and IIED. Id. With respect to Plaintiff's fraud claim, the Court found that more detail was required as to what false and misleading statements were made, when they were made, and who said them. Id. at 11. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing failed because Plaintiff failed to identify the contract at issue and the benefits deprived by Defendants. Id. at 12. The Court found that Plaintiff's UCL claim was not pleaded with the required specificity. Id. at 13. Finally, as to Plaintiff's IIED claim, Plaintiff failed to state what about Defendants' conduct rendered it so extreme as to "exceed all bounds of that usually tolerated in a civilized community." Id. at 15.

**United States District Court**
For the Northern District of California

1    Plaintiff filed her FAC on August 16, 2011, asserting five

2   causes of action for (1) promissory estoppel; (2) fraud,

3   misrepresentation, and reckless disregard; (3) breach of the

4   implied covenant of good faith and fair dealing; (4) violation of

5   the UCL; and (5) IIED.  FAC ¶¶ 22-50.  The gravamen of the FAC

6   appears to be that Plaintiff would have sold her residence or

7   obtained alternative financing had she not been misled by

8   Defendants' statements and actions concerning a loan modification

9   or had adequate notice of the trustee's sale.  See id. ¶¶ 12, 14.

10  The FAC includes additional facts not alleged in the Complaint.

11  Defendants contend these new facts are insufficient to cure the

12  defects identified in the Court's July 21, 2011 Order.  Defendants

13  now move to dismiss the second, third, fourth, and fifth causes of

14  action in the FAC.  Defendants have also moved to strike various

15  paragraphs from the FAC.

16

17  **III.  LEGAL STANDARD**

18      A motion to dismiss under Federal Rule of Civil Procedure

19  12(b)(6) "tests the legal sufficiency of a claim."  Navarro v.

20  Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

21  on the lack of a cognizable legal theory or the absence of

22  sufficient facts alleged under a cognizable legal theory."

23  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

24  1988).  "When there are well-pleaded factual allegations, a court

25  should assume their veracity and then determine whether they

26  plausibly give rise to an entitlement to relief."  Ashcroft v.

27  Iqbal, 129 S. Ct. 1937, 1950 (2009).  However, "the tenet that a

28  court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." Id. (citing Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made
in a complaint must be both "sufficiently detailed to give fair
notice to the opposing party of the nature of the claim so that the
party may effectively defend against it" and "sufficiently
plausible" such that "it is not unfair to require the opposing
party to be subjected to the expense of discovery." Starr v. Baca,
633 F.3d 1191, 1204 (9th Cir. 2011).

IV. **DISCUSSION**

   A.   **Fraud**

   Wells Fargo argues that Plaintiff has not properly pleaded her
second claim for "fraud, misrepresentation, reckless disregard" in
light of Federal Rule of Civil Procedure 9(b)'s heightened pleading
standard for claims sounding in fraud.[4]  MTD at 2-3.  The Court
agrees.  "To satisfy Rule 9(b), a pleading must identify the who,
what, when, where, and how of the misconduct charged, as well as
what is false or misleading about [the purportedly fraudulent]
statement, and why it is false." Cafasso, U.S. ex rel. v. Gen.
Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)
(internal quotation marks omitted).  In its July 21, 2011 Order,
the Court found that Plaintiff's fraud claim failed because more
detail was required than what was supplied.  July 11, 2011 Order at
11.  Despite alleging new facts, Plaintiff's fraud claim still

---

[4] Plaintiff does not dispute that her second cause of action sounds
in fraud.

United States District Court
For the Northern District of California

1  fails to meet the pleading requirements of Rule 9(b).

2      Plaintiff's claim does not point to any specific conduct,
3  statements, or misrepresentations, leaving Defendants and the Court
4  to guess at which of her general allegations constitute the basis
5  for her claim.  See FAC ¶¶ 29-32.  Construing the FAC liberally,
6  the crux of the claim appears to be that Defendants falsely
7  represented that they would postpone the trustee's sale so long as
8  Plaintiff and Defendants were working on a loan modification or a
9  new loan.[5]  See id. ¶ 12.  The FAC offers new details concerning
10 Plaintiff's communications with Defendants in the months preceding
11 and following the trustee's sale.  See id. ¶¶ 13-18.  However,
12 taken together and construed in the light most favorable to
13 Plaintiff, these allegations are still insufficient to state
14 plausible claim for fraud, misrepresentation, and reckless
15 disregard.

16     While Plaintiff alleges the "who," "what," and "when"
17 concerning many of her communications with Defendants in March and
18 April 2010, those communications simply do not support her theory
19 of fraud.  Plaintiff alleges that she spoke with several of
20 Defendants' representatives about loan modification alternatives in
21 March 2010.  See id. ¶ 13.  However, she does not allege particular
22 facts showing that, during this time, Defendants promised or
23 otherwise represented that they would postpone the trustee's sale
24 while these discussions were ongoing.  Plaintiff does allege that
25 she was "assured" by someone at phone number 800-282-3458 "that the

26
27 [5] Plaintiff confirms this theory in her opposition brief.  See
   Opp'n at 5 ("plaintiff is alleging that in the course of loan
   modification dialogue and process, defendants made new independent
28 promises, relied on by plaintiff to her detriment in not seeking a
   sale of her property").

United States District Court
For the Northern District of California

foreclosure had been or was being postponed." Id. ¶ 13b.  However,
Plaintiff does not identify the date on which this statement was
made or, critically, how long the sale was to be postponed.

Plaintiff's allegations concerning her April 2010
communications with Defendants are also unhelpful.  Plaintiff
alleges that, during April 2010, Defendants informed her that they
would be unable to proceed with her modification request; the
foreclosure process would resume; Plaintiff was ineligible for the
Mortgage Assistance Plan Modification; Plaintiff was ineligible for
the Home Affordable Modification Program; and Plaintiff did not
have enough income to qualify for short-term assistance.[6] Id. ¶
14-15.  Once again, none of these allegations evidence a promise or
representation by Defendants that the trustee's sale would be
postponed while loan modification discussions were ongoing.
Further, the allegation that Defendants informed Plaintiff that the
foreclosure process would resume tend to undercut rather than
bolster Plaintiff's theory that Defendants led her to believe that
the trustee's sale was being postponed.[7]

The FAC also suggests that Defendants are liable for
fraudulent concealment because they failed to inform Plaintiff

---

[6] Defendants also allegedly informed Plaintiff that she "may still
be eligible for other loss mitigation options." FAC ¶ 15a.
However, Plaintiff does not allege that Defendants promised or
represented that the sale would be postponed while Plaintiff
applied for these programs.

[7] Plaintiff also alleges that Defendants falsely represented that
the loan could be reinstated after the date of the trustee's sale.
See FAC ¶ 18.  Defendants argue that these post-sale statements are
not actionable with respect to the fraud claim because Plaintiff
did not rely on such statements.  MTD at 5.  The Court agrees.
Once the trustee's sale occurred, Plaintiff no longer owned the
property and could not have plausibly relied on Defendants' loan
modification offers.

about the status of the foreclosure sale.  <u>See</u> <u>id.</u> ¶ 15-16.

Defendants argue that Plaintiff has not alleged facts establishing

that Wells Fargo had a duty to disclose the postponed date of the

foreclosure sale.  MTD at 7-8.  Citing <u>Perlas v. GMAC Mortgage,</u>

<u>LLC</u>, 187 Cal. App. 4th 429, 436 (Cal. Ct. App. 2010), Wells Fargo

points out that loan transactions generally do not give rise to a

fiduciary or confidential relationship.  <u>Id.</u> at 7.  Wells Fargo

also argues that, under California Civil Code section 2924g, notice

of postponement is to be given "by public declaration by the

trustee" and "[n]o other notice of postponement need be given."

<u>Id.</u> at 7-8 (quoting Cal. Civ. Code § 2924g(d)).  Plaintiff responds

by citing to language from the Court's July 21, 2011 Order stating

that "defendants are responsible for statements they make to

borrowers."  Opp'n at 4.  This language is inapposite as the Court

was referring to whether the Home Owner's Loan Act ("HOLA")

preempts claims for fraud premised on affirmative statements made

by lenders.  July 21, 2011 Order at 9.  The July 21, 2011 Order did

not create a new duty requiring lenders to disclose a postponed

sale date.

     The Court finds that, despite the new allegations in the FAC,

Plaintiff has not pled sufficient facts to state a plausible claim

for fraud.  Accordingly, the Court DISMISSES Plaintiff's second

cause of action for "fraud; misrepresentation; reckless disregard"

WITH LEAVE TO AMEND.

**B.**   <u>**Implied Covenant of Good Faith and Fair Dealing**</u>

     The Court initially dismissed Plaintiff's claim for breach of

the implied covenant of good faith and fair dealing because the

Complaint did not specify what contract was at issue.  <u>Id.</u> at 11-

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

12.  Plaintiff now identifies the contract as the Line of Credit Agreement, Note, and Deeds of Trust.  FAC ¶ 35.  Specifically, Plaintiff alleges that Defendants "did not act in good faith under the terms of the Deeds of Trust when they secretly continued the foreclosure sale from the February 1, 2010 date and continued to negotiate with plaintiff for a modification of the First Loan and Second Loan without informing plaintiff of the new secretly determined date."  Id. ¶ 36.  Wells Fargo argues that the claim fails as a matter of law since the implied covenant of good faith and fair dealing cannot prohibit Defendants from foreclosing on the property, an act which the Deed of Trust expressly permits.  MTD at 12-14.  The Court agrees.

"It is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract."  Carma Developers, Inc. v. Marathon Dev. California, Inc., 2 Cal. 4th 342, 373 (1992).  "[T]he implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose."  Id. (internal quotation marks and citation omitted).  Accordingly, "[t]he implied covenant cannot be stretched to prohibit a party from doing that which the agreement expressly permits."  Schuck v. Fannie Mae, No. 11-cv-691 OWW JLT, 2011 U.S. Dist. LEXIS 69257, at *15 (E.D. Cal. June 28, 2011); see also Dooms v. Fed. Home Loan Mortg. Corp., No. CV F 11-0352 LJO DLB, 2011 U.S. Dist. LEXIS 38550, at *22-23 (E.D. Cal. Mar. 30, 2011).

In the instant action, the Deed of Trust provides that, if

1   Plaintiff failed to make payment on her loans, "[l]ender may

2   exercise the power of sale, take action to have the Property sold

3   under applicable law, and invoke such other remedies as may be

4   permitted under any applicable law."  RJN Ex. B ("DOT") at 13.

5   Plaintiff does not deny that she was in default in repaying the

6   loans.  See FAC ¶ 7.  Accordingly, the implied covenant does not

7   impose a duty on Defendants that would prevent them from exercising

8   their right to sell the property.

9       In her opposition brief, Plaintiff argues that her action is

10  different from others in which district courts rejected claims for

11  breach of the implied covenant because "defendants acted on

12  plaintiff's requests for a loan modification and undertook acts and

13  communications to plaintiff in regard thereto, such that then it

14  was a breach of the implied covenant to proceed to the trustee's

15  sale without further notice to plaintiff and opportunity for her to

16  protect herself."  Opp'n at 7.  Plaintiff's argument here is not

17  altogether clear to the Court.  To the extent that Plaintiff is

18  arguing that her claim for breach of the implied covenant is

19  premised on new, independent duties created by the acts and

20  communications of Defendants, this theory is inconsistent with the

21  cause of action pleaded in the FAC.  In any event, Plaintiff does

22  not point to any express terms of the Deed of Trust, Line of Credit

23  Agreement, or Note which would have been frustrated by the sale of

24  the residence.

25      For the foregoing reasons, the Court DISMISSES Plaintiff's

26  third claim for breach of the implied covenant of good faith and

27  fair dealing WITHOUT LEAVE TO AMEND.

28  ///

**C.    <u>UCL</u>**

Plaintiff's UCL claim is based on four categories of deceptive business practices.  First, Plaintiff cites Defendants' "[f]ailure to provide Plaintiff with accurate and proper information as to loan status and steps of foreclosure in accordance with the requirements of [] Sections 2924, 2924b, 2924f, and 2924g of the California Civil Code."  FAC ¶ 42.  Wells Fargo argues that Plaintiff has failed to properly allege an unlawful act or practice because she has not identified specific defects in the notice of default, notice of sale, or how the sale was conducted.  MTD at 16. Further, Wells Fargo complains that the Civil Code sections cited by Plaintiff encompass dozens of requirements, and Plaintiff has not specified which particular requirements were not met.  <u>Id.</u> Plaintiff does not provide a coherent response.  The Court agrees with Wells Fargo and finds that Plaintiff has not pled sufficient facts to put Defendants on notice as to what requirements they allegedly violated.

The last three categories of deceptive business practices sound in fraud and, consequently, are subject to the heightened pleading standards of Rule 9(b).  Plaintiff alleges that Defendants violated the UCL by: making statements to Plaintiff and concealing information relating to the ongoing foreclosure sale; "[e]ngaging in misleading statements and omissions as to the foreclosure sale, depriving plaintiff of the opportunity to object and stop the foreclosure sale"; and "[i]nducing plaintiff to not resume her payments or otherwise cure alleged defaults by falsely promising and stating that a modification of the First Loan and Second Loan would be reasonably considered in good faith based on plaintiff's

**United States District Court**
For the Northern District of California

circumstances." FAC ¶ 42. Wells Fargo argues that these allegations fail to meet the heightened pleading standards of Rule 9(b). MTD at 15-16. The Court agrees. Plaintiff's underlying UCL allegations are substantially similar to, if not exactly the same as, those underlying Plaintiff's claim for "fraud, misrepresentation, reckless disregard." Like the other fraud allegations, Plaintiff's UCL allegations fail to specify "the who, what, when, where, and how of the misconduct charged." See section IV.A., supra.

Accordingly, the Court DISMISSES Plaintiff's claim for violation of the UCL WITH LEAVE TO AMEND.

**D.   Intentional Infliction of Emotional Distress**

Plaintiff's fifth cause of action for IIED alleges that "Defendants' conduct was outrageous and beyond the bounds of decency and in reckless disregard of causing plaintiff mental and emotional distress." FAC ¶ 47. Plaintiff alleges this conduct included "misleading telephone conferences promising and representing defendants' willingness to consider a modification of plaintiff's loans when, in fact, another department or division of defendants was proceeding with a private trustee's sale of foreclosure of plaintiff's Second Loan." Id. Defendants' allegedly outrageous conduct also included representations that they would consider and grant Plaintiff a home equity loan or reinstate Plaintiff's first loan, even after Plaintiff's residence had been sold through a trustee's sale. Id.

To plead a claim for IIED, Plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing,

16

United States District Court
For the Northern District of California

emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Christensen v. Super. Ct., 54 Cal. 3d 868, 903 (1991) (quotations and citations omitted).  Conduct is only "extreme and outrageous" when it was "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Davidson v. City of Westminster, 32 Cal. 3d 197, 185 (1982).

As pointed out by Wells Fargo, several district courts in this circuit have held that conduct similar to that alleged by Plaintiff was insufficient to support a claim for IIED.  See Ottolini v. Bank of Am., No. C-11-0477 EMC, 2011 U.S. Dist. LEXIS 92900, at *32-35 (N.D. Cal. Aug. 19, 2011); Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010).  The Court agrees with the reasoning of those decisions and finds that Plaintiff has not alleged conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized society."  Plaintiff has merely pled that, on multiple occasions, Defendants communicated the possibility of a loan modification or other loss mitigation options.  The fact that Defendants ultimately found Plaintiff ineligible for a modification and exercised their legal right to sell the property does not render this conduct outrageous.

Accordingly, Plaintiff's fifth claim for IIED is DISMISSED WITHOUT LEAVE TO AMEND.

**E.   Motion to Strike**

Wells Fargo moves to strike allegations in Plaintiff's second and fifth causes of action relating to punitive damages and certain portions of Plaintiff's prayer for relief as they relate to

**United States District Court**
For the Northern District of California

1   Plaintiff's fourth cause of action.  MTS at 2.  As this Order

2   dismisses Plaintiff's last four causes of action, Wells Fargo's

3   Motion to Strike is DENIED as moot.[8]

4

5   **V.   CONCLUSION**

6       Plaintiff Cynthia M. Chang's first cause of action for

7   promissory estoppel remains undisturbed.  The Court GRANTS

8   Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's

9   second, third, fourth, and fifth causes of action.  Specifically:

10   • The Court DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's third

11     cause of action for breach of the implied covenant of good

12     faith and fair dealing and fifth cause of action for

13     intentional infliction of emotional distress.

14   • The Court DISMISSES WITH LEAVE TO AMEND Plaintiff's second

15     cause of action for fraud, misrepresentation, reckless

16     disregard and fourth cause of action for violation of

17     California Business and Professions Code Section 17200, et

18     seq.

19   Plaintiff is granted thirty (30) days leave to file an amended

20   complaint.  If Plaintiff fails to file an amended complaint within

21   this time frame, her second and fourth causes of action will be

22   dismissed WITHOUT LEAVE TO AMEND.  The Court also DENIES Wells

23   ───────────────

24   [8] Wells Fargo also moves to strike paragraph 6 of Plaintiff's
     prayer for relief.  MTS at 2.  Wells Fargo describes this paragraph
     as a prayer for "exemplary and punitive damages," id., but the
25   paragraph actually relates to attorney's fees, FAC at 16.  The
     Court assumes Wells Fargo intended to move to strike paragraph 5 of
26   Plaintiff's prayer, which refers to exemplary or punitive damages.
     Id. Regardless of which paragraph Wells Fargo intended to move to
27   strike, the Court DENIES the motion.  Wells Fargo has offered no
     explanation as to why Plaintiff's prayer for attorney's fees is
28   inappropriate and Plaintiff's prayer for punitive damages is now
     moot.

Fargo Bank, N.A.'s Motion to Strike as moot.  The hearing scheduled

for November 18, 2011 is hereby VACATED.

     IT IS SO ORDERED.


     Dated: November 15, 2011



UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

19