IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA M. CHANG,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WACHOVIA MORTGAGE, FSB, a national association; WELLS FARGO BANK, N.A., a national association; and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | Case No. C-11-1951 SC<br><br>ORDER DENYING MOTION FOR LEAVE TO AMEND AND GRANTING MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Plaintiff Cynthia M. Chang ("Plaintiff" or "Chang") brings this action for promissory estoppel against Defendants Wachovia Mortgage, FSB ("Wachovia") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants") in connection with the foreclosure of her home.  The crux of Plaintiff's case is that Defendants promised to postpone foreclosure while they were considering Plaintiff's application for a loan modification.  In reliance on this promise, Plaintiff refrained from selling her home and recovering her equity in the property.  Defendants allegedly broke their promise by selling Plaintiff's home without notice while loan modification discussions were ongoing.  Defendants'

action allegedly caused Plaintiff to lose over $250,000 in equity and adversely affected her credit score.

Plaintiff now moves for leave to file a second amended complaint ("SAC") so as to add new causes of action for "negligent performance of an assumed duty" and "damage to credit."  ECF No. 46 ("SAC Mot.").  The motion is fully briefed.  ECF Nos. 47 ("SAC Mot. Opp'n"), 50 ("Reply ISO SAC Mot.").  Also before the Court is Defendants' fully briefed motion for summary judgment.  ECF Nos. 48 ("MSJ"), 51 ("MSJ Opp'n"), 54 ("Reply ISO MSJ").  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for determination without oral argument.  For the reasons set forth below, the Court DENIES Plaintiff's motion for leave to file a SAC and GRANTS Defendants' motion for summary judgment.

**II.  BACKGROUND**

    **A.  Factual Background**

Plaintiff was the owner of a residence located at 80 Collingwood Street, Number 302, San Francisco, California, Block 2648, Lot 056 ("the Property") from 1996 through 2010.  ECF No. 45-2 ("Chang Decl. ISO SAC") ¶ 2.  Around May 18, 2006, Plaintiff refinanced the Property with World Savings Bank ("WSB"), Wells Fargo's predecessor-in-interest.[1]  Defs.' Exs. 2-5.[2]  The refinance

---

[1] Plaintiff alleges, and Wells Fargo concedes, that Wachovia is WSB's successor-in-interest, and that Wells Fargo is Wachovia's successor-in-interest.  ECF No. ("FAC") ¶¶ 2-6.  The Court refers to all three entities as Wells Fargo, the latest successor-in-interest.

[2] Defendants filed an appendix of exhibits in support of their motion for summary judgment.  ECF Nos. 45-5 - 45-11 ("Defs.' Exs.").  Plaintiff also filed an appendix of exhibits.  ECF Nos. 52, 53 ("Pl.'s Exs.").

...

consisted of two loans: the first in the principal amount of $380,000 ("the First Loan") and the second, an equity line of credit, in the amount of $50,000 ("the Second Loan").  Id.  Both loans were secured by deeds of trust recorded against the Property.  Id.

In 2008, Plaintiff was laid off from her teaching position at San Francisco State University.  Chang Decl. ISO SAC ¶ 3; ECF No. 22 ("FAC") ¶ 7.  Sometime thereafter, Plaintiff fell behind on her loan payments.  Id.  In September 2009, Wells Fargo initiated foreclosure proceedings on the Second Loan by recording and mailing a notice of default.  Defs.' Ex. 8.  According to the notice, Plaintiff was $4,525.97 in arrears.  In November 2009, Plaintiff's financial problems worsened.  She suffered a wrist injury from a dog assault which interfered with her ability to work.  Chang Decl. ISO SAC ¶ 3; Defs.' Ex. 6 ("Chang Dep.") at 29.  On January 11, 2010, a notice of trustee's sale was recorded and mailed to Plaintiff in connection with the Second Loan.  Defs.' Ex. 10.  The trustee's sale on the Second Loan was initially scheduled for February 1, 2010.  Id.  Unhelpfully, neither party has submitted any information indicating whether Defendants initiated foreclosure proceedings against the First Loan during this period.

Due to her financial difficulties, Plaintiff attempted to obtain a loan modification on both her First Loan and Second Loan.  In September 2009, Plaintiff initiated loan modification discussions with Wells Fargo.  Chang Dep. at 40.  Wells Fargo then reviewed Plaintiff's loans under the Mortgage Assistance Program ("MAP") and the Home Affordable Modification Program ("HAMP").

3

Dolan Decl. ¶ 12.[3]  During the review process, the foreclosure sale was postponed four times.  Defs.' Ex. 18.  The final postponement, dated April 12, 2010, set the foreclosure sale for May 12, 2010.  Id.

Underwriters ultimately determined that Plaintiff was ineligible for a modification under either MAP or HAMP.  Dolan Decl. ¶ 13.  Wells Fargo notified Plaintiff that she was ineligible for MAP and HAMP programs in four separate letters sent between April 9, 2010 and April 16, 2010.  Defs.' Exs. 14-17.  An April 9 letter stated that the First Loan was ineligible for modification under MAP.  Defs.' Ex. 14.  That message was repeated in a letter dated April 12.  Defs.' Ex. 15.  Another letter dated April 12 stated that the Second Loan was ineligible for modification under MAP.  Defs.' Ex. 16.  The two April 12 letters also stated: "Please note that during our review of your situation, we suspended the foreclosure process.  The foreclosure process against the property will now resume."  Defs.' Ex. 15-16.  An April 16 letter stated that the First Loan was also ineligible for modification under HAMP.  Defs.' Ex. 17.

Plaintiff states that, following receipt of the April 9 and April 12, 2010 letters, she immediately and repeatedly called Wells Fargo and requested that it explain the status of her pending loan modification applications.  ECF No. 51-1 ("Chang MSJ Decl.") ¶ 24.  Plaintiff also states that "[a]t no time in my telephone conversations with defendant in April and May[] 2010[] did defendant tell me that the Trustee's sale was still pending or that

---

[3] Michael Dolan ("Dolan"), who is employed in Wells Fargo's Loss Mitigation Support Group, filed a declaration in support of Defendants' motion for summary judgment.  ECF No. 48-1 ("Dolan Decl.")

4

1  there was a Trustee's sale date set." Id. ¶ 25.  There is no
2  indication that Plaintiff requested this information during her
3  telephone conversations with Wells Fargo.  Plaintiff claims that it
4  was her understanding that both the First Loan and Second Loan were
5  still being considered for modification in April and May of 2010
6  and that "defendant more than once confirmed that there would be no
7  foreclosure while loan modification was being considered." Id. ¶
8  27.
9      On May 12, 2010, the Property was sold at a trustee's sale to
10 a third party.  Defs.' Ex. 20.  Plaintiff states that the sale took
11 her by "complete surprise" because she thought she was still being
12 considered for a loan modification.  Chang MSJ Decl. ¶ 13.  She
13 also states that, had she been aware of the status of the
14 foreclosure process, she would have sought a private sale of the
15 Property so that she could recover her equity. Id. ¶ 14.
16 Plaintiff claims that the foreclosure sale caused her to lose
17 equity in excess of $250,000. Id. ¶ 15.  Additionally, Plaintiff
18 claims that Defendant's conduct has materially and adversely
19 affected her credit score. Id.
20     **B.   Procedural History**
21     Plaintiff brought this action in California state court on
22 March 21, 2011, alleging nine causes of action, including a claim
23 for promissory estoppel.  ECF No. 1, Ex. A.  After the action was
24 removed to federal court, Defendants moved to dismiss.  ECF No. 13.
25 On July 21, 2011, the motion was granted in part and denied in
26 part.  ECF No. 21.  The promissory estoppel claim remained
27 undisturbed, but four of Plaintiff's claims were dismissed with
28 prejudice, and the remainder were dismissed with leave to amend.

5

Id. at 15-16.  Plaintiff subsequently amended a number of her claims and Defendants again moved to dismiss them.  ECF Nos. 22, 28.  On November 15, 2011, the Court dismissed the amended claims, leaving only Plaintiff's claim for promissory estoppel undisturbed. ECF No. 37.

On April 20, 2012, the Court issued a scheduling order, setting trial for September 10, 2012 and the discovery cut-off for July 10, 2012.  ECF No. 44 ("4/20/2012 Scheduling Order").  The Court also set August 10, 2012 as the last date for dispositive motions to be heard.  Id.  On June 5, 2012, Plaintiff filed her motion for leave to file a SAC.  Plaintiff seeks to add new causes of action for negligent performance of an assumed duty and damage to credit.  SAC Mot., Ex A.  On June 22, 2012, Defendants filed their motion for summary judgment.

**III. DISCUSSION**

    **A.    Plaintiff's Motion for Leave to Amend**

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course during a certain period of time.  Fed. R. Civ. P. 15(a)(1).  In all other cases, including this one, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  Id.  Thus, in cases such as this, "[t]he standard for granting leave to amend is generous."  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 701 (9th Cir. 1988).  "The court considers five factors in assessing the propriety of leave to amend--bad faith, undue delay, prejudice to the opposing party,

6

futility of amendment, and whether the plaintiff has previously amended the complaint." United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011).

Here there is no evidence of bad faith.[4] As to undue delay, Plaintiff could have brought her two proposed claims earlier, as they do not rest on new facts uncovered through discovery. "Undue delay by itself, however, is insufficient to justify denying a motion to amend." Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999). Also weighing against Plaintiff's motion is the fact that she has amended her complaint twice before. Additionally, amendment would prejudice Defendants to a certain extent since they may need additional discovery to respond to Plaintiff's new claims. See Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990). The discovery cut-off has already passed and trial is set to commence in one month. See 4/20/2012 Scheduling Order. However, pre-trial dates and deadlines can be re-scheduled and it is doubtful that additional discovery would be excessively burdensome since Plaintiff's new causes of action are based on many of the same facts as her existing claim for promissory estoppel. The dispositive factor here is futility of amendment. As Plaintiff's proposed claims for negligent performance of an assumed duty and damage to credit cannot possibly succeed, granting Plaintiff leave to amend would not help her case.

Plaintiff's proposed claim for negligent performance of an assumed duty is predicated on the theory that once Defendants assumed the obligation of reviewing Plaintiff's loan modification

---

[4] Defendants make the implausible argument that Plaintiff's bad faith is evidenced by the fact that she moved to amend before Defendant moved for summary judgment. See Opp'n to SAC Mot. at 5.

applications, they owed Plaintiff a duty of care in carrying out the task.  SAC Mot. at 4.  Plaintiff contends that Defendants breached that duty by failing to promptly notify Plaintiff of the scheduled date for the foreclosure sale.  Id.

The Court disagrees.  Under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089, 1096 (1991).  Plaintiff asserts that Defendants stepped outside their conventional roles by committing to review Plaintiff's application for a loan modification.  SAC Opp'n at 3-4.  However, assessing a borrower's eligibility for a loan modification is intimately tied to a financial institution's lending role.  See DeLeon v. Wells Fargo Bank, N.A., 10-CV-01390-LHK, 2011 U.S. Dist. LEXIS 8296, *26-27 (N.D. Cal. Jan. 28, 2011).  Further, even if Defendants owed Plaintiff some kind of tort duty by accepting her loan modification application, that duty was limited to processing and reviewing the application with due care.  Plaintiff offers no authority which would suggest this narrow duty encompasses an obligation to ensure that a borrower is aware of the date of a postponed foreclosure sale.

Amending the pleadings to add Plaintiff's proposed cause of action for damage to credit would also be futile.  Even if damage to credit constitutes an independent cause of action -- and it is not clear that it does -- it must be predicated on some culpable conduct on the part of the defendant.  Here, Plaintiff argues that Defendant engaged in culpable conduct by "foreclos[ing] on

1  plaintiff's residence without giving her proper notice and
2  opportunity to receive her equity."  SAC Mot. at 5.  However, as
3  set forth in this Order and the Court's prior orders on Defendants'
4  motions to dismiss, the Court cannot conclude that Defendant
5  engaged in any wrongdoing when they foreclosed on the Property.
6  Accordingly, Plaintiff could not possibly state a claim for damage
7  to credit.
8      For these reasons, the Court DENIES Plaintiff's motion for
9  leave to file a SAC.
10     **B.   Defendants' Motion for Summary Judgment**
11     Entry of summary judgment is proper "if the movant shows that
12 there is no genuine dispute as to any material fact and the movant
13 is entitled to judgment as a matter of law."  Fed. R. Civ. P.
14 56(a).  Summary judgment should be granted if the evidence would
15 require a directed verdict for the moving party.  Anderson v.
16 Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  Thus, "Rule 56[]
17 mandates the entry of summary judgment . . . against a party who
18 fails to make a showing sufficient to establish the existence of an
19 element essential to that party's case, and on which that party
20 will bear the burden of proof at trial."  Celotex Corp. v. Catrett,
21 477 U.S. 317, 322 (1986).
22     Here, the evidence before the Court cannot support Plaintiff's
23 claim for promissory estoppel, even when viewed in the light most
24 favorable to her.  The elements of a claim for promissory estoppel
25 are: "(1) a promise clear and unambiguous in its terms; (2)
26 reliance by the party to whom the promise is made; (3) [the]
27 reliance must be both reasonable and foreseeable; and (4) the party
28 asserting the estoppel must be injured by his reliance."  Aceves v.

U.S. Bank, N.A., 192 Cal. App. 4th 218, 225 (Cal. Ct. App. 2011) (internal quotations omitted). "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted." Wilson v. Bailey, 8 Cal. 2d 416, 423 (Cal. 1937) (quoting Dickerson v. Colgrove, 100 U.S. 578, 580 (1880)).

Plaintiff alleges that Defendants promised they would not proceed with the foreclosure sale so long as they were considering Plaintiff's application for a loan modification. FAC ¶ 24. The undisputed facts show that Defendants honored that promise. Defendants denied Plaintiff's application for a loan modification on April 12, 2010, and did not foreclose on the Property until one month later. See Defs.' Exs. 15, 16. The April 12, 2010 denial letters informed Plaintiff that Defendants were "unable to proceed with [Plaintiff's] loan modification request." Id. The letters also stated: "Please note that during our review of your situation, we suspended the foreclosure process. The foreclosure process against the property will now resume." Id. If, after receiving these letters, Plaintiff believed that her modification application was still under review and the foreclosure sale would be postponed further, her belief was unforeseeable and unreasonable. Such reliance cannot support a claim for promissory estoppel.

In her declaration, Plaintiff suggests that Defendants later resumed their consideration of her loan modification application and indicated that they would continue to postpone the foreclosure sale. See Chang MSJ Decl. ¶¶ 18-29. The Court finds that the declaration does not create a triable issue of fact. The

10

declaration describes Plaintiff's understanding of the status of her loans based on her telephone conversations with Defendants' representatives, as well as what Defendants' representatives did not say during those conversations.  See id.  Absent from the declaration is any indication that Defendants affirmatively stated that Plaintiff's loan was still under review after April 12, 2010.

Plaintiff also makes much of the confusion created by the fact that, in April 2010, her First Loan was in active foreclosure while her Second Loan was not.  See MSJ Opp'n at 4.  Plaintiff states: "Often when I called, I was asked for a loan number and in several instances I provided the loan number for the First Loan, Loan No. 1394.  Defendant was not in fact foreclosing on this loan."  Chang MSJ Decl. ¶ 27.  It appears that Plaintiff took this to mean that the Property would not be subject to a foreclosure sale. Plaintiff's confusion about her loans cannot save her claim for promissory estoppel.  There is no evidence that Defendants made a clear and unambiguous promise that they would refrain from foreclosing on one loan if the other was not in active foreclosure.

Additionally, Plaintiff has not offered any evidence to suggest that her First Loan was under review during the relevant period.  In the April 12 denial letter, Defendants informed Plaintiff that the First Loan was ineligible for a loan modification and that foreclosure proceedings would resume on that loan.  See Defs.' Ex. 15.  Plaintiff points to a number of documents pertaining to the First Loan which purportedly contradict the April 12 denial letter.  See MSJ Opp'n at 4-5 (citing Pl.'s Exs. A, D, E, F).  The Court sees no contradiction.

11

1        Plaintiff first refers to a delinquency record maintained by
Wells Fargo, dated April 19, 2010, which states: "GATHERING DETAILS
ON RFD & FNCLS TO FURTHER RVEW SITUATION . . . . NO FCL SCHEDULED
SALE DATE."  Pl.'s Ex. A.  However, Plaintiff has offered no
evidence to suggest that these statements were actually conveyed to
her or that this record shows that Defendant had committed to
reconsidering her modification application.  <u>See</u> ECF NO. 54-1 Ex. A
("Dolan Dep.") at 136-37.  Second, Plaintiff points to the April 9,
2010 denial letter, which states: "Even though you are ineligible
for assistance under [MAP], the [First] loan may still be eligible
for other loss mitigation options . . . ."  Defs.' Ex. 14.[5]  This
statement is irrelevant.  The fact that the First Loan was eligible
for other loss mitigation options does not mean that it was still
under review by Defendants.  Third, Plaintiff points to a letter
from Defendants dated August 3, 2010, which states that Plaintiff
was again denied for the HAMP program.  Pl.'s Ex. E.  The letter
goes on to say: "You have 30 calendar days from the date of this
notice to contact [Defendants] to discuss the reason for non-
approval . . . no foreclosure sale will be conducted and you will
not lose your home during this 30-day period . . . ."  <u>Id.</u>
Plaintiff could not have relied on the representations in this
letter since it was sent months after the foreclosure sale took
place.  Finally, Plaintiff refers to a letter from Wells Fargo,
dated May 5, 2010, thanking Plaintiff for her "home equity
application."  Pl.'s Ex. F.  But Plaintiff's application for a home
equity loan is irrelevant to the status of her application for a
loan modification.

---

[5] Plaintiff also filed a copy of this document as Plaintiff's
Exhibit D.

12

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's sole remaining claim for promissory estoppel.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff Cynthia Chang's motion for leave to file a second amended complaint and GRANTS Defendants Wachovia Mortgage and Well Fargo Bank, N.A.'s motion for summary judgment.  The Court will enter a separate judgment on Plaintiff's sole remaining claim for promissory estoppel.

IT IS SO ORDERED.

Dated: August 6, 2012

_____
UNITED STATES DISTRICT JUDGE